UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                    :
AKUA DONKOR,                                        :
                                                    :
                              Plaintiff,            :
                                                    :                    23-CV-369 (VSB)
            - against -                             :
                                                    :                    **OPINION & ORDER**
WEILL CORNELL MEDICAL COLLEGE,                      :
                                                    :
                              Defendant.            :
                                                    :
---------------------------------------------------------X

<u>Appearances</u>:

Douglas Mace
Daniel Joseph Grace
Danny Grace PLLC
New York, NY
*Counsel for Plaintiff*

Rachel Esther Kramer
Sheryl A. Orwel
Weill Cornell Medical College
New York, NY
*Counsel for Defendant*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Before me is Defendant's motion to dismiss Plaintiff's disability discrimination claims.

Because Plaintiff fails to allege that her Attention-Deficit/Hyperactivity Disorder ("ADHD"),

dyslexia, and dyscalculia substantially limited a major life activity, or that Defendant took an

adverse action against her because of them, Defendant's motion to dismiss is GRANTED.

I.    **Factual Background**[1]

Plaintiff Akua Donkor, ("Donkor" or "Plaintiff") worked as a research technician for

Defendant Weill Cornell Medical College ("Defendant" or "Cornell") from February 8, 2021 to

February 24, 2022.  (Doc. 1 ("Compl.") ¶¶ 17, 19, 23.)  Plaintiff's direct supervisor at Cornell

was Elizabeth Nyakatura ("Nyakatura").  (*Id*. ¶ 24.)  "Early in her employment," Plaintiff

notified Nyakatura "that she had ADHD, which [a]ffects general organizational and executive

function capabilities."  (*Id*. ¶ 25.)  Plaintiff describes ADHD as "an umbrella disorder" which in

her case manifested as "struggles with dyscalculia and dyslexia."[2]  (*Id*.)  "Notwithstanding this

disability, she was able to perform the essential functions of her job with or without

accommodations."  (*Id*.)

Plaintiff alleges that she received little guidance from her supervisor after starting her job.

(*See* Compl. ¶¶ 26–29.)  Plaintiff "sought the help of IT and a different supervisor who worked

for an adjacent department, but still could not access the system.  This other supervisor

personally taught [Plaintiff] most of the functions that she performed in her role as Ms.

Nyakatura's subordinate, whereas Ms. Nyakatura never walked her through a single protocol."

(*Id*. ¶ 29.)

Seven months into the job, on September 27, 2021, Nyakatura met with Plaintiff "to

discuss a miscommunication regarding scheduling and the timing of lunch breaks."  (*Id*. ¶ 30.)

---

[1] The facts set forth herein are taken from the allegations contained in the Complaint and the documents referenced therein.  (See Doc. 1.)  I assume Plaintiff's allegations in the Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Stedman's Medical Dictionary defines "dyscalculia" as "[d]ifficulty in performing simple mathematical problems," Dyscalculia, *Stedman's Medical Dictionary*, No. 271900 (Database Updated Nov. 2014), and "dyslexia" as "[i]mpaired reading ability with a competence level below that expected on the basis of the person's level of intelligence, and in the presence of normal vision, letter recognition, and recognition of the meaning of pictures and objects," Dyslexia, *Stedman's Medical Dictionary*, No. 272890 (Database Updated Nov. 2014).

Nyakatura used the meeting "to belittle and berate [Plaintiff's] productivity and ability to perform her job duties," even though Nyakatura knew that Plaintiff struggled with organization and executive function because of her ADHD.  (*Id*.)  Nyakatura also rebuffed Plaintiff's request for more specific guidance and supervision.  (*Id*.)  The next day, Plaintiff met with another supervisor, Paul Balderes, and explained to him that she believed Nyakatura was unfairly targeting her for requesting "a schedule reflective of her peers" and "more involved supervision." (*Id*. ¶ 32.)  On October 13, 2021, Plaintiff met with Nyakatura and Balderes, and Plaintiff agreed to modify her lunch and break schedule to comply with her employer's policy.  (*Id*. ¶ 34.)

A week after the October 13 meeting, Nyakatura scheduled a meeting with Plaintiff and Cornell's human resources department ("HR") to place Plaintiff on a performance improvement plan ("PIP"), citing Plaintiff's "purported weak communication skills and scientific understanding."  (*Id*. ¶ 35.)  Plaintiff objected during the meeting, and told HR that "she was not being provided adequate training . . . despite the fact that the Plaintiff's supervisor knew that she had a learning disability, and after discussing with her the types of accommodations and materials that would benefit her job performance."  (*Id*. ¶ 36.)  Plaintiff reiterated these issues during a subsequent meeting with HR "sometime between October 21 and November 19, 2021." (*Id*. ¶ 37.)  Nonetheless, Cornell put Plaintiff on a PIP during a November 19, 2021 meeting, in which an HR representative told Plaintiff that she was being "'argumentative' and that she would not have the opportunity to advocate for herself."  (*Id*. ¶ 40.)

Over the course of the PIP, Plaintiff met with Nyakatura "biweekly" in order to "receive her instructions for the week."  (*Id*. ¶ 41.)  Plaintiff alleges that during this time, Nyakatura "continued to otherwise ignore her in the lab and over email, offering very little guidance,

instruction, and interaction," even though Nyakatura "gave her counterparts who were not suffering from a disability more attention, guidance, and opportunities to gain experience." (*Id*.)

During a PIP meeting on February 11, 2022, Plaintiff told Nyakatura that "her complaints of bias were not being taken seriously," and that she believed Nyakatura was dismissing her "requests for guidance" and treating Plaintiff "differently from her colleagues." (*Id.* ¶ 42.) On February 24, 2022, Cornell terminated Plaintiff's employment. (*Id*. ¶ 43.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 22, 2022. (*Id*. ¶ 9.) She received a right-to-sue letter from the EEOC on December 19, 2022. (*Id*. ¶ 10.)

## II.    Procedural History

Plaintiff filed the Complaint in this action on January 4, 2023. (*See* Compl.) The Complaint asserts claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., (*id.* ¶¶ 50–62); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1), (*id.* ¶¶ 63–73), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), (*id.* ¶¶ 74–84). Plaintiff seeks reinstatement to her job, compensatory damages, punitive damages, and her attorneys' fees and costs. (*Id*. at 14–15.)

Defendant filed a motion to dismiss the Complaint for failure to state a claim on March 27, 2023, (Doc. 5), along with a supporting memorandum of law, (Doc. 6 ("Mem.")). Plaintiff filed her opposition on April 5, 2023. (Doc. 9 ("Opp'n").) Defendant did not file a reply.

## III.    Legal Standard

"A motion to dismiss" for failure to state a claim "is designed to test the legal sufficiency of the complaint." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal

quotation marks omitted).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must

plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  The court takes the well-pled facts in the complaint as true,

draws all reasonable inferences in the plaintiff's favor, and ignores any "legal conclusions"

among the factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is proper

when "the allegations in a complaint, however true, could not raise a claim of entitlement to

relief" as a matter of law.  *Twombly*, 550 U.S. at 558.

## IV.    Discussion

Defendant's motion to dismiss is only directed at Plaintiff's federal claims asserted under

the ADA.  Defendant then argues that if I dismiss the ADA claims I should decline to exercise

supplemental jurisdiction over the state-law claims.  (Mem. at 12.)  *See, e.g.*, *Knight v. Standard*

*Chartered Bank*, 531 F. Supp. 3d 755, 774 (S.D.N.Y. 2021).  I thus begin my analysis with

Plaintiff's ADA claims.

### A.    *Discrimination*

The ADA prohibits work-related discrimination "on the basis of disability."  42 U.S.C.

§ 12112(a).  To state an ADA-discrimination claim, a plaintiff must show:  "(1) the defendant is

covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within

the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job,

with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment

action because of [her] disability or perceived disability."  *Capobianco v. City of New York*, 422

F.3d 47, 56 (2d Cir. 2005); *see also Sharikov v. Philips Med. Sys. MR*, 103 F.4th 159, 166 (2d Cir.

2024).  The parties do not dispute that Defendant is covered by the ADA.  Defendant argues that

the Complaint fails to state an ADA-discrimination claim because Plaintiff does not sufficiently

allege that she has a qualifying disability, and that even if she had, she does not sufficiently

allege that her disability caused Cornell to take an adverse action against her.  (Mem. at 5, 8.)

### 1.  Disability

The first question is whether Plaintiff's ADHD, dyslexia, and dyscalculia qualify as a

disability within the meaning of the ADA.  The ADA defines "disability" as "(A) a physical or

mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an impairment."  42

U.S.C. § 12102(1).  ADHD is generally regarded as an "impairment."  *Montgomery v. Chertoff*,

No. 03-CV-5387, 2007 WL 1233551, at *5 (E.D.N.Y. Apr. 25, 2007); *see also Zuckerman v. GW

Acquisition LLC*, No. 20-CV-8742, 2021 WL 4267815, at *10 (S.D.N.Y. Sept. 20, 2021) ("EEOC

regulations make clear that '[a]ny mental or psychological disorder,' including an 'emotional or

mental illness,' qualifies as a covered impairment." (quoting 29 C.F.R. § 1630.2(h)(2))).

Defendant does not dispute this point.  (*See* Mem. at 6).

However, that does not end the inquiry.  "To qualify as disabled, plaintiff must

demonstrate that her impairment substantially limits a major life activity."  *Montgomery*, 2007

WL 1233551, at *5; *Capobianco*, 422 F.3d at 56 ("Not every impairment is a 'disability' within

the meaning of the ADA; rather, there are two requirements:  the impairment must limit a major

life activity and the limitation must be substantial.").  "It is 'well-established that an impairment

does not significantly restrict a major life activity if it results only in mild limitations.'"

*Langella v. Mahopac C. Sch. Dist.*, No. 18-CV-10023, 2023 WL 2529780, at *3 (S.D.N.Y. Mar.

15, 2023) (quoting *Collins v. Giving Back Fund*, No. 18-CV-8812, 2019 WL 3564578, at *13

(S.D.N.Y. Aug. 6, 2019)).  "Moreover, it is not enough for a plaintiff to only 'allude to her or his

impairments in her or his pleadings; she or he must plead how those impairments significantly

impacted her or his major life activities.'" *Id*. (quoting *Collins*, 2019 WL 3564578, at *13) (alterations adopted). EEOC regulations, which I may consider in deciding the instant motion, state that "major life activities include, but are not limited to, 'caring for oneself, performing manual tasks, sleeping, concentrating, thinking, communicating, interacting with others, and working.'" *Zuckerman*, 2021 WL 4267815, at *10 (quoting 29 C.F.R. § 1630.2(i)(1)(i)) (alterations adopted). The regulations also explain that whether an impairment "substantially limits" an individual's major life activity is relative to "most people in the general population." *Id*. (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Plaintiff's Complaint fails to plausibly allege that her ADHD, dyscalculia, or dyslexia substantially limited any major life activities. The statement that Plaintiff "had ADHD, which [a]ffects general organizational and executive function capabilities and constitutes a disability under the ADA," (Compl. ¶ 25), is both unsupported by any "factual allegations to support the conclusion that her impairment substantially limited major life activities," *Zuckerman*, 2021 WL 4267815, at *11 (citing *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2020 WL 2489774, at *11 (E.D.N.Y. May 14, 2020)), and is a legal conclusion insufficient to withstand a motion to dismiss standing alone. In other words, it is not enough for Plaintiff to plead that her ADHD, dyscalculia, and dyslexia "[a]ffect[]" her major life activities, (Compl. ¶ 25), she must plead facts that support that her "major life activities are substantially limited by reason of [her] disabilities." *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 (E.D.N.Y. 2017). Plaintiff fails to do so.

Plaintiff suggests that it is plausible to infer substantial limitations in her major life activities from her allegations that, because of the difficulties her ADHD presented, she needed "guidance" and "more foundation and training" from her supervisor to succeed at her job.

(Compl. ¶ 31; *see* Opp'n at 8.)  As an initial matter, these allegations at most describe, in conclusory terms, potential accommodations rather than limitations in Plaintiff's major life activities.  Work difficulties, including those related to executive functioning and organization, are "widespread" and not necessarily limited to individuals with ADHD, dyscalculia, and dyslexia.  *Zuckerman*, 2021 WL 4267815, at *11.  *But see Lewis v. Essex Cnty.*, No. 8:23-CV-1636, 2024 WL 5294285, at *3, *18 (N.D.N.Y. May 1, 2024), *report and recommendation adopted*, 2024 WL 5053201 (N.D.N.Y. Dec. 9, 2024) (determining a plaintiff had plausibly alleged his ADHD and post-traumatic stress disorder substantially limited his major life activities because "a detailed summary of his physical and mental health history" showed these difficulties caused him to suffer alcohol-use disorder).  In order for the Complaint to allege Plaintiff has a qualifying disability, it must plausibly allege that Plaintiff's "difficulties were substantial 'as compared to most people in the general population,'" *Zuckerman*, 2021 WL 4267815, at *11 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)), or "allege facts regarding the frequency, duration, and severity" of her conditions, *Shine v. N.Y.C. Hous. Auth.*, No. 19-CV-04347, 2020 WL 5604048, at *6 (S.D.N.Y. Sept. 18, 2020).  *See also Weiss v. Cnty. of Suffolk*, 416 F. Supp. 3d 208, 215 (E.D.N.Y. 2018) (explaining that to show that a condition is substantially limiting, a plaintiff must explain its "frequency" or "duration"); *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 16 (2d Cir. 2011) (dismissing disability claim where the plaintiff had not shown "whether her alleged problems were any worse than is suffered by a large portion of the nation's adult population" (internal quotation marks omitted)); *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30 (2d Cir. 2019) (dismissing ADA claim because the plaintiff's complaint did not allege "facts as to how her disability substantially limits her major life activities" (internal quotation marks omitted)).

In attempting to meet this burden, Plaintiff offers nothing more than a "general" description of "organizational and executive function" difficulties. (Compl. ¶ 25.) This is insufficient to establish this element of her claim, because "vague statements about a plaintiff's difficulties, without more, will not suffice to support a finding of an ADA violation." *Shine*, 2020 WL 5604048, at *6 (quoting *Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) (cleaned up). Courts have concluded that dyslexia, for instance, does not substantially limit a major life activity if it merely means that a plaintiff needs "additional time" and "assistance" on work assignments. *Kamrowski v. Morrison Mgt. Specialist*, No. 05-CV-9234, 2010 WL 3932354, at *9 (S.D.N.Y. Sept. 29, 2010) (collecting cases); *see also Lipscomb v. Techs., Services, & Info., Inc.*, No. 09-CV-3344, 2011 WL 691605, at *13 (D. Md. Feb. 18, 2011) (dismissing ADA claim because "Plaintiff merely states that he has ADD, dyslexia, and learning disabilities, but alleges no facts showing how any of these conditions substantially restricts any major life activities such as learning or working"). Additionally, ADHD may substantially limit major life activities where it "require[s] medication that prevents [the plaintiff] from working under certain recurring circumstances." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 484 (D. Md. 2015). Here, Plaintiff fails to allege facts plausibly suggesting that her ADHD, dyscalculia, and dyslexia impose more than "mild limitations" on her major life activities, which is insufficient to survive a motion to dismiss. *Langella*, 2023 WL 2529780, at *3 (internal quotation marks omitted).

Alternatively, Plaintiff argues that she can establishes this element by allegations that demonstrate that her employer "regarded" her as having a disability. 42 U.S.C. § 12102(1)(C). (*See* Opp'n at 9–10.) To state a disability-discrimination claim under this theory of liability, a plaintiff need only establish that "she has been subjected to an [adverse employment action]

because of an actual or perceived physical or mental impairment[,] whether or not the impairment limits or is perceived to limit a major life activity." *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 262 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 12102).  This is "a question of intent, not whether the employee has a disability," and therefore merges with the causation inquiry, which I address next. *Simmons v. N.Y.C. Transit Auth.*, 340 F. App'x 24, 27 (2d Cir. 2009) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir. 1997)).

## 2.  Adverse Action Because of Disability

To state a disability-discrimination claim, Plaintiff must allege facts from which I may infer that her employer took an adverse action against her "because of" her disability, or her employer's perception of her disability. *Capobianco*, 422 F.3d at 56.  At this stage of the litigation, this is a "very lenient" pleading requirement. *Rodriguez v. Verizon Telecom*, No. 13-CV-6969, 2014 WL 6807834, at *6 (S.D.N.Y. Dec. 3, 2014).  Plaintiff need only set forth "factual circumstances from which a discriminatory motivation can be inferred," such as differences in treatment or "the timing or sequence of events leading to the plaintiff's termination." *Id.* (internal quotation marks omitted).  Plaintiff attempts to do so by alleging a failure to accommodate and that her employment was terminated.

### a.  Failure to Accommodate

Plaintiff argues that Cornell's failure to provide her the "additional training and resources" that she requested was an adverse action taken because of Plaintiff's disability. (Opp'n at 11.)  Even assuming that failing to provide these resources was an adverse action,[3] the allegations in the Complaint do not plausibly suggest a causal link to Plaintiff's purported

---

[3] Defendant does not argue that the denial of Plaintiff's purported requests was not an adverse employment action. (*See* Mem. at 9–11.)

disability.  Plaintiff pleads that during the September 27, 2021 meeting regarding her performance issues, her supervisor, Nyakatura, "belittle[d] and berate[d] her productivity and ability to perform her job duties, identifying the very issues [the supervisor] knew the Plaintiff struggled with (and continuously asked for guidance on) based on her having ADHD."  (Compl. ¶ 30.)  A discriminatory comment can be direct evidence of discrimination.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).  However, Plaintiff's allegation is not that her supervisor made a discriminatory comment, it is that Nyakatura "knew" that Plaintiff's job difficulties were "based on" ADHD, dyscalculia, and dyslexia and criticized her work performance anyway.  (Compl. ¶ 30.)  Plaintiff alleges that she "notified" Nyakatura of the fact of her ADHD, (*id.*  ¶ 25), but not that she provided Nyakatura any "details," such as the extent of her limitations or potential impact on her productivity, *Horsham*, 136 F. Supp. 3d at 263.  For instance, the Complaint states that "while ADHD is an umbrella disorder, specifically plaintiff struggles with dyscalculia and dyslexia."  (Compl. ¶ 25.) It does not state that Plaintiff told Nyakatura about the dyscalculia and dyslexia.  In other words, the Complaint neither alleges how Plaintiff's ADHD impacted her abilities or that Nyakatura knew about these limitations.  Adopting Plaintiff's position would mean that any supervisor with knowledge of the fact that an employee had ADHD would face ADA liability by criticizing the employee's work.  Without additional allegations as to the extent of Plaintiff's condition or Nyakatura's knowledge and perception of that condition, it is not plausible to infer a discriminatory motivation from her comments criticizing Plaintiff's work.  *See Rodriguez*, 2014 WL 6807834, at *6.

Plaintiff also argues that her allegation that Nyakatura gave Plaintiff's coworkers "who were not suffering from a disability more attention, guidance, and opportunities to gain

experience" than Plaintiff supports an inference of discrimination.  (Compl. ¶ 41.)  In some

circumstances, "[a] plaintiff may support an inference of discrimination by demonstrating that

similarly situated employees of a different . . . disability status were treated more favorably" than

the plaintiff.  *Edwards v. Wilkie*, No. 16-CV-8031, 2020 WL 2792997, at *9 (S.D.N.Y. May 29,

2020) (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)) (alterations

adopted).  To do so, however, "the plaintiff must compare herself to employees who are similarly

situated in all material respects." *Id.* (quoting *Norville*, 196 F.3d at 95).  Here, Plaintiff's

allegation—a single sentence—is "generic and conclusory" and cannot defeat the motion to

dismiss, since Plaintiff does not "identify" these other individuals or even attempt to describe

whether they were "similarly situated" in any relevant respect.  *Fishman v. Off. of Ct. Admin.*

*New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, at *8 (S.D.N.Y. Mar. 5, 2020) (citations

omitted).

### b.  Termination

Neither has Plaintiff plausibly alleged a discriminatory motive for the termination of her

employment.  Plaintiff pleads that two weeks before she was fired, she "voiced her concerns that

her complaints of bias were not being taken seriously," and that Nyakatura "continued to dismiss

her requests for guidance and treated her differently from her colleagues."  (Compl. ¶ 42.)  This

allegation better fits Plaintiff's retaliation claim, and does not support her disability-

discrimination claim.  *See Murtha v. New York State Gaming Comm'n*, No. 17-CV-10040, 2019

WL 4450687, at *11–12 (S.D.N.Y. Sept. 17, 2019) (explaining that allegations of termination

following plaintiff's complaints of discrimination are analyzed under the retaliation framework

and do not support a disability-discrimination claim (citing *Penn v. N.Y. Methodist Hosp.*, No.

11-CV-9137, 2013 WL 5477600, at *13 (S.D.N.Y. Sept. 30, 2013)).

In sum, Plaintiff has not alleged that she suffered a qualifying disability under the ADA, or that her employer took an adverse action against her because of its perception of her disability. Plaintiff's ADA disability-discrimination claim is DISMISSED.

### B.    *Retaliation*

To state a claim for retaliation in violation of the ADA, "a plaintiff must plausibly allege that '1) the employee engaged in a protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action.'"  *Murtha*, 2019 WL 4450687, at *14 (quoting *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016)).  Plaintiff fails to establish the first or second prongs—that she engaged in protected activity and that Cornell was aware of that protected activity.

As an initial matter, I note that Defendant does not specifically address Plaintiff's retaliation claim in its motion to dismiss.  However, this does not save Plaintiff's retaliation claim—as long as a plaintiff has "an opportunity to be heard," a "district court has the power to dismiss a complaint sua sponte for failure to state a claim upon which relief can be granted." *Palkovic v. Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) (quoting *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988)).  Here, although Defendant did not address this claim in its papers, since Defendant moved to dismiss the complaint in its entirety, (*see* Doc. 5), Plaintiff addresses her retaliation claim in opposing Defendant's motion, (*see* Opp'n at 12).  Since Defendant moved to dismiss the entire case, Plaintiff "was on notice" that her retaliation claim "was subject to dismissal" and therefore had an "opportunity to be heard."  *K2M Design, Inc. v. Schmidt*, No. 22-CV-3069, 2024 WL 1313392, at *11 (S.D.N.Y. Mar. 26, 2024) (internal quotation marks omitted).

13

Plaintiff argues that the termination of her employment was retaliatory because two weeks prior she made "complaints of bias" to her supervisor.  (Opp'n at 12.)  A complaint to a supervisor is protected activity—even if the complaint is meritless—when it is "sufficiently pointed to be reasonably understood as a complaint about discrimination . . . not just general unsatisfactory or unfair conduct."  *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) (internal quotation marks omitted).  "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

Here, Plaintiff alleges that during the February 11, 2022 meeting with Nyakatura, two weeks before the February 24, 2022 termination of her employment, Plaintiff "again voiced her concerns that her complaints of bias were not being taken seriously.  Specifically, she expressed her concern that Ms. Nyakatura continued to dismiss her requests for guidance and treated her differently from her colleagues."  (Compl. ¶ 42.)  Given that the complaint only alleges Nyakatura's general knowledge of Plaintiff's ADHD diagnosis, *see supra* IV.A.2, and that Plaintiff specifies that she expressed her generic objection to "bias" by seeking Nyakatura's additional "guidance," (Compl. ¶ 42), Plaintiff's concern is "reasonably understood" not as a "pointed" complaint of discrimination but rather as Plaintiff's "general" dissatisfaction with Nyakatura's supervision, *Cardwell*, 2020 WL 6274826, at *31 (quoting *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020)).  In other words, although the complaint

characterizes the pre-termination meeting as relating to "bias," in context this relates to Plaintiff's prior requests to "more foundation and training" and prior grievance that "Nyakatura was targeting her and treating her unfairly based on her requests for a schedule reflective of her peers and involving more involved supervision." (Compl. ¶¶ 31–32, 41.) Plaintiff's artful pleading of this claim does not create an inference that Nyakatura "could have understood" the pre-termination meeting to include protected activity. *Kelly*, 715 F.3d at 17. Plaintiff's ADA retaliation claim is therefore DISMISSED.

### C.    *State-Law Claims*

Having dismissed Plaintiff's ADA claim, the only claims that remain are state-law claims. I do not have original jurisdiction over these claims, and I have discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over them. In considering whether to exercise supplemental jurisdiction over the remaining claims, I "must consider 'the values of judicial economy, convenience, fairness, and comity.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, judicial economy weighs in favor of dismissal—the case is still in a "relatively early stage," as no discovery has taken place and the case is "not yet ready for trial." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). In support of my exercising supplemental jurisdiction, Plaintiff makes the conclusory statement that she "has made a prima facie showing of disability, discrimination, an adverse employment action and causation sufficient to survive Defendant's motion to dismiss." (Opp'n at 12–13.) Although "the state-law issues [are] not so groundbreaking as to preclude the exercise of jurisdiction" under 28 U.S.C. § 1367(a)(1), *Kroshnyi*, 771 F.3d at 102, the consideration of comity also weighs in favor of dismissal, because

15

dismissal avoids "[n]eedless" federal-court "decisions of state law," *Valencia*, 316 F.3d at 305 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Thus, I decline to exercise supplemental jurisdiction over the remaining state-law claims, and they are DISMISSED without prejudice.

### V.    <u>Leave to Amend</u>

Plaintiff states in opposing dismissal that "where a complaint is dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6), it is the usual practice to allow leave to replead."  (Opp'n 7 (internal quotation marks omitted)).  I interpret this as a request for leave to file an amended complaint.  Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely grant leave [to amend] when justice so requires."  Because Plaintiff may be able to address the deficiencies in her complaint by more "adequate" factual allegations, I will grant Plaintiff leave to file an amended complaint.  *Plasencia v. City of New York Dept. of Educ.*, 19-CV-11838, 2023 WL 6161928, at \*6 (S.D.N.Y. Sept. 21, 2023).[4]

### VI.    <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

IT IS HEREBY ORDERED that Plaintiff shall file any amended complaint no later than March 20, 2025.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 5.

SO ORDERED.

Dated: February 27, 2025
        New York, New York

Vernon S. Broderick
United States District Judge

---

[4] Plaintiff may replead her state-law claims in any amended complaint.